Argued and submitted July 29, affirmed September 4, 1991

STATE OF OREGON,
*Respondent,*

*v.*

JAMES H. HANSEN,
*Appellant.*

(90-1597; CA A67711 (Control))

STATE OF OREGON,
*Respondent,*

*v.*

CLARA DAY,
*Appellant.*

(90-1598; CA A67712)

STATE OF OREGON,
*Respondent,*

*v.*

RONALD RAY BENOIT,
*Appellant.*

(90-1599; CA A67713)
(Cases Consolidated)

816 P2d 706

Woodrow W. Pollock, Vancouver, Washington, argued the cause and filed the brief for appellants.

Cynthia A. Forbes, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Warren, Presiding Judge, and Riggs and Edmonds, Judges.

WARREN, P. J.

## WARREN, P. J.

Defendants appeal their convictions for promoting gambling, ORS 167.122, and possession of a gambling device. ORS 167.147. The cases were consolidated for trial and appeal. We affirm.

The trial was tried on stipulated facts. Defendants Day and Benoit contracted with the owner of the Safari Club, a restaurant and lounge, to manage the operation of poker tables. Defendant Hansen also helped manage the games. Players bought poker chips from defendants for $1 a chip and could exchange them after playing at the same rate. They played a kind of poker called "hold-em." Dealers at each table dealt the cards, but they did not deal themselves a hand or in any way bet on the outcome. They also performed other services, such as officiating and selling chips. After each round, it was customary for the winner to tip the dealer one chip. A dealer could deal between 30-40 rounds an hour, and the tips were the dealers' sole compensation. Defendants received 25 percent of the tips that the dealers collected.

The statute defining promoting gambling, ORS 167.122,[1] and the statute defining possession of a gambling device, ORS 167.147,[2] require the existence of "unlawful gambling." Defendants argue[3] that they should not have been convicted of either crime, because the poker games did not constitute "unlawful gambling." " 'Unlawful' means not

---

[1] ORS 167.122(1) provides:

"A person commits the crime of promoting gambling in the second degree if the person knowingly promotes or profits from unlawful gambling."

[2] ORS 167.147(1) provides:

"A person commits the crime of possession of a gambling device if, with knowledge of the character thereof, the person manufactures, sells, transports, places or possesses, or conducts or negotiates a transaction affecting or designed to affect ownership, custody or use of:

"(a) A slot machine; or

"(b) Any other gambling device, believing that the device is to be used in promoting unlawful gambling activity."

[3] Defendants assign error to the court's "finding" that they promoted and profited from unlawful gambling. The state does not contend that we cannot review that assignment of error. Defendants' contention, in effect, is that the court should have granted their motion for judgments of acquittal, and we review the case accordingly.

specifically authorized by law." ORS 167.117(15). "Gambling" is broadly defined to include the kind of poker played here, except to the extent that the game is a "social game." ORS 167.117(4)(c).[4]

" 'Social game' means:

"(a)   A game, other than a lottery, between players in a private home where no house player, house bank or house odds exist and there is no house income from the operation of the social game; and

"(b)   If authorized pursuant to ORS 167.121, a game, other than a lottery, between players in a private business, private club or place of public accommodation where no house player, house bank or house odds exist *and there is no house income from the operation of the social game.*" ORS 167.117(13). (Emphasis supplied.)

Defendants argue that the money they received as 25 percent of the dealers' tips was not income from the operation of the games, because the tips were "the proceeds of detached and disinterested generosity" of the players. The record does not support defendants' characterization of the tips as gifts, wholly distinct from the poker operation. The fact that tips were not mandatory does not make them a gift. Be that as it may, the dealers provided services for the poker game and for which the players compensated them. The money defendants received from the dealers was income to defendants directly resulting from the games. The games were not "social games," but "unlawful gambling."[5]

Affirmed.

---

[4] ORS 167.117 provides, in part:

"(4) 'Gambling' means that a person stakes or risks something of value upon the outcome of a contest of chance or a future contingent event not under the control or influence of the person, upon an agreement or understanding that the person or someone else will receive something of value in the event of a certain outcome. 'Gambling' does not include:

"* * * * *

"(c)  Social games."

[5] Because we conclude that the percentage of the tips paid to the house constituted house income, we need not address the state's alternative argument that the games were not "social games" because defendants operated a house bank. ORS 167.117(13)(b).